[Civ. No. 13105. Third Dist. Aug. 15, 1972.]

JANE PATRICIA SHERIDAN, Plaintiff and Respondent, v.
DONALD WILLIAM SHERIDAN, Defendant and Appellant.

**COUNSEL**

Yudelson & Lawton and Stephen E. Lawton for Defendant and Appellant.

Saulque, Hendry & Viets and Richard Viets for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, Edward P. O'Brien, Gloria F. DeHart, Deputy Attorneys General, John M. Price, District Attorney, and Michael E. Barber, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**REGAN, J.**—Defendant Donald W. Sheridan appeals from an order appointing a receiver to disburse funds from defendant's paycheck in accordance with court order.[1] He contends:

The doctrine of sovereign immunity precludes the California courts from appointing a receiver where the sole purpose of such an appointment is receiving and disbursing the salary of defendant who is an employee of an agency of the United States government.

FACTS

In 1965, defendant obtained a divorce from plaintiff in the State of New Mexico. Plaintiff was awarded custody of their four children and defendant was ordered to pay child support.

After the rendition of the divorce decree, defendant moved to Sacramento County· in California, where on September 12, 1966, plaintiff

---

[1]Such an order is appealable. (Code Civ. Proc., § 904.1, subd. (g).)

brought an action to establish a foreign judgment of divorce. On January 13, 1967, the trial court ordered the New Mexico judgment to be reduced to a California judgment.

From 1965 to 1967, defendant failed to make child support payments to plaintiff and certain other arrearages accrued. On November 25, 1970, plaintiff petitioned the trial court for the appointment of a receiver. Defendant resisted, contending his salary as an employee of an agency of the United States government[2] is exempt from execution.

On February 23, 1971, the trial court granted plaintiff's motion for the appointment of a receiver. The order appointing the receiver reads, in pertinent part, as follows: "The respondent [defendant Donald Sheridan], immediately upon receipt thereof, is hereby ordered and directed to endorse and deliver to said receiver herein appointed any and all checks and/or drafts tendered to him as compensation for his employment.

"Said receiver is directed to take possession of and negotiate said checks and/or drafts and to pay petitioner [plaintiff Jane Sheridan] from the proceeds thereof the sums allowed for child support, attorney's fees, costs, and the indebtedness of respondent to petitioner, all as fully set forth in the orders of this court, dated February 1, 1967, and October 22, 1970."[3]

This appeal followed.

### Appointment of Receiver

■ Defendant states the precise issue involved is whether or not an asset, otherwise exempt from execution, may be reached by utilizing proceedings in aid of execution. He states it is clear that the appointment of a receiver was sought for the sole purpose of receiving the salary of defendant, an employee of a United States agency. He then argues that the salary of a government employee is exempt from execution by federal law.

Defendant relies heavily upon the case of *Buchanan* v. *Alexander* (1846) 45 U.S. (4 How.) 20 [11 L.Ed. 857]. In *Buchanan* the court held that the salary due seamen of the frigate Constitution was not subject to attachment by their creditors. In so holding, the court stated: "The im-

---

[2] National Aeronautics and Space Administration.

[3] The order then goes on to set forth the deductions and allocations to be made by the receiver.

portant question is, whether the money in the hands of the purser, though due to the seaman for wages, was attachable. A purser, it would seem, cannot, in this respect, be distinguished from any other disbursing agent of the government. If the creditors of these seamen may, by process of attachment, divert the public money from its legitimate and appropriate object, the same thing may be done as regards the pay of our officers and men of the army and of the navy; and also in every other case where the public funds may be placed in the hands of an agent for disbursement. To state such a principle is to refute it. No government can sanction it. At all times it would be found embarrassing, and under some circumstances it might be fatal to the public service.

"The funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by State process or otherwise, the functions of the government may be suspended. *So long as money remains in the hands of a disbursing officer, it is as much the money of the United States as if it had not been drawn from the treasury. Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects. The purser is not the debtor of the seamen."* (*Id.* at pp. 20-21 [11 L.Ed. at p. 858].) (Italics added.)

Thus, defendant argues the doctrine of sovereign immunity established by *Buchanan* applies in this case to preclude the appointment of a receiver. The rationale of *Buchanan* has been applied in subsequent federal cases. (See *Arnold* v. *United States* (S.D.Tex. 1971) 331 F.Supp. 42 [suit in effect a garnishment action against U.S.A.]; *Johnson* v. *Johnson* (E.D.Pa. 1971) 332 F.Supp. 510; *United States* v. *Krakover* (10th Cir. 1967) 377 F.2d 104, 106; *Clarise Sportswear Co.* v. *U & W Manufacturing Company* (E.D.Pa. 1963) 223 F.Supp. 961, 962; *Applegate* v. *Applegate* (E.D.Va. 1941) 39 F.Supp. 887, 889-890; *McGrew* v. *McGrew* (1930) 38 F.2d 541, 544 [59 App.D.C. 230].)

However, in all of these cases the United States or an agency thereof was made a party to the action or was ordered to perform some act. In the instant case, no relief is sought against the sovereign. The court order in issue does not attempt to garnish or attach any property in possession of the United States government, is directed to defendant alone, and is applicable to his salary only after it has come into defendant's possession. Under these circumstances, it would not appear that the doctrine of sovereign immunity should apply.

Nevertheless, there is language in the federal cases indicating a contrary result. In *Applegate, supra,* the court states: "While the Congress has seen fit to waive the immunity of the United States from suit in the case of certain money claims against it and also in case of many of the corporations created by it, it has so far never waived that immunity and permitted attachment or garnishee proceedings against the United States Treasury or its Disbursing Officers. This cannot be done either directly, or indirectly through the appointment of a sequestrator or receiver or by contempt order against the debtor defendant. McGrew v. McGrew, 59 App.D.C. 230, 38 F.2d 541." (39 F.Supp. at p. 890.)

Amicus curiae[4] contend that *McGrew* is erroneous in its assumption that execution cannot be done indirectly by order to the defendant, and has not been followed in the federal courts in its unwarranted extension of that proposition. They further contend that the doctrine of sovereign immunity, as initially set forth in *Buchanan,* protects the *sovereign* from suit, and once the employee has received his check, the national object in the appropriation of funds has been served.

This argument has merit, especially in this modern era when there are so many people employed by the federal government. So long as the sovereign is not *directly* involved, we see no cogent reason why federal employees should enjoy complete immunity from state enforcement of their financial obligations.[5] In any event, we are not bound by the decisions of the lower federal courts even on federal questions. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].)

In *Medical F. Assn.* v. *Short* (1939) 36 Cal.App.2d Supp. 745 [92 P.2d 961], the court was presented with the question whether wages received from the Works Progress Administration were subject to execution. The court decided the question affirmatively, stating (at p. 747): "Although the intangible credit could not be reached by plaintiff in such a proceeding as this while it remained a mere debt due from the govern-

---

[4]The People have filed an amicus curiae brief in support of plaintiff-respondent. They define their interest as follows: "Since there are large numbers of persons in California employed by the federal government in both civilian and military capacities, the People have a compelling interest in assuring that their assets are available to the maximum extent possible for enforcement of judgment by all available civil remedies, including the special provisions for child support . . . ."

[5]We note, however, that where *retirement pay* of a federal government employee is involved, the appointment of a receiver is improper because section 690.18 of the Code of Civil Procedure exempts such funds from execution even after it is in the possession of the person or deposited by him. (See *Conaway* v. *Conaway* (1963) 218 Cal.App.2d 427 [32 Cal.Rptr. 890].)

ment to defendant [citation], it became available and amenable to control of the court when its character and status were changed to the extent of its becoming tangible property in the actual possession and control of defendant, i.e., when she received the check. If necessary or expedient in securing the conversion of the check into legal tender and the application of one-half thereof toward satisfaction of the judgment, the court may appoint a receiver for that purpose [citations]."[6]

No other California case has been found, and none has been cited, which is directly in point. However, we find the principle enunciated in *Short, supra,* to be persuasive. We therefore conclude that once the federal wages are in the possession of the defendant, the doctrine of sovereign immunity is not applicable under the circumstances present here.[7] We also conclude the appointment of the receiver was proper. (See *Jackson* v. *Jackson* (1967) 253 Cal.App.2d 1026, 1040-1041 [62 Cal.Rptr. 121].)

The order appealed from is affirmed.

Friedman, Acting P. J., and Pierce, J.,* concurred.

---

[6]The *Buchanan* case was not discussed by the court. The *Short* case is criticized in 28 Cal.L.Rev. 393. However, the criticism is directed at the "fact" that W.P.A. wages were a form of relief paid only to those in need.

[7]In this respect, we note that *Buchanan* involved a case where the creditors were attempting to attach wages of seamen "in the hands of a disbursing officer of the federal government." (*F.H.A.* v. *Burr* (1940) 309 U.S. 242, 244 [84 L.Ed. 724, 728, 60 S.Ct. 488].) We also note that the reason for the *Buchanan* decision is that the United States, unless consent is granted, cannot be sued. (*Sherwood* v. *United States* (2d Cir. 1940) 112 F.2d 587, 593.) In this connection, we finally note that here no governmental agency is a party, and no agency has objected.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.